Laurence M. Rosen (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JARED BERTRIM, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TUPPERWARE BRANDS CORPORATION, PATRICIA A. STITZEL, CHRISTOPHER D. O'LEARY, CASSANDRA HARRIS, and MICHAEL POTESHMAN,<br><br>Defendants. | No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>CLASS ACTION</u><br><br>JURY TRIAL DEMANDED |

Plaintiff Jared Bertrim ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, public filings, wire and press releases published by and regarding Tupperware Brands Corporation ("Tupperware" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Tupperware securities from January 30, 2019 through February 24, 2020, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4.      This Court has jurisdiction over each defendant named herein because each defendant has sufficient minimum contacts with this District so as

1

to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

5.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

6.    In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## **PARTIES**

7.    Plaintiff, as set forth in the accompanying Certification, purchased the Company's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

8.    Defendant Tupperware operates as a direct-to-consumer marketer of various products across a range of brands and categories in Europe, Africa, the Middle East, the Asia Pacific, North America, and South America. The Company engages in the manufacture and sale of an array of products for consumers under the Tupperware brand name. The Company also manufactures and distributes skin and hair care products, cosmetics, bath and body care, toiletries, fragrances, jewelry, and nutritional products under the Avroy Shlain, Fuller, NaturCare, Nutrimetics, and Nuvo brands.

9.    The Company is incorporated in Delaware with its principal executive offices located at 14901 South Orange Blossom Trail, Orlando, Florida. The Company's securities are traded on the New York Stock Exchange ("NYSE") under the ticker symbol "TUP."

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

10.     Defendant Patricia A. Stitzel ("Stitzel") served as Tupperware's Chief Executive Officer ("CEO") and Lead Director during the Class Period until November 11, 2019.

11.     Defendant Christopher D. O'Leary ("O'Leary") has served as Tupperware's Interim CEO since November 12, 2019 and as a Director throughout the Class Period.

12.     Defendant Cassandra Harris ("Harris") has served as Tupperware's Chief Financial Officer ("CFO") and Executive Vice President since April 1, 2019.

13.     Defendant Michael Poteshman ("Poteshman") served as Tupperware's CFO and Executive Vice President during the Class Period until March 31, 2019 and provided consulting services from March 31, 2019 to September 30, 2019.

14.     Defendants Stitzel, O'Leary, Harris, and Poteshman are sometimes referred to herein as the "Individual Defendants."

15.     Each of the Individual Defendants:

(a)     directly participated in the management of the Company;

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was privy to confidential proprietary information concerning the Company and its business and operations;

(d)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

3

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

(f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g) approved or ratified these statements in violation of the federal securities laws.

16. The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

17. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

18. The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading
### Statements Issued During the Class Period

19. On January 30, 2019, Tupperware issued a press release (the "January Press Release") announcing its fourth quarter 2018 financial results. In the January Press Release, Tupperware provided a full-year 2019 guidance of $3.86 to $4.01 GAAP EPS (compared to $3.11 from full-year 2018).

20. On February 26, 2019, Tupperware filed a Form 10-K for its fiscal year ended December 29, 2018 with the SEC (the "2018 Annual Report"), which provided the Company's financial results and position. The 2018 Annual Report was signed by Defendants Stitzel and Poteshman. The 2018 Annual Report contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002

4

("SOX") by Defendants Stitzel and Poteshman attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

21.    The 2018 Annual Report provided the following, in pertinent part, regarding the Company's internal controls:

**Evaluation of Disclosure Controls and Procedures**
The Company maintains disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15(d)-15(e)) that are designed to ensure that information required to be disclosed in the Company's reports filed or submitted under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in the Securities and Exchange Commission's rules and forms, and that such information is accumulated and communicated to the Company's management, including the Chief Executive Officer and the Chief Financial Officer, as appropriate to allow timely decisions regarding required disclosure. In designing and evaluating the disclosure controls and procedures, management recognized that controls and procedures, no matter how well designed and operated, can provide only reasonable assurance of achieving the desired control objectives.

*As of the end of the period covered by this report, management, under the supervision of the Company's Chief Executive Officer and Chief Financial Officer, evaluated the effectiveness of the design and operation of the Company's disclosure controls and procedures. Based upon that evaluation, the Chief Executive Officer and Chief Financial Officer concluded that the disclosure controls and procedures were effective as of December 29, 2018.*

**Management's Report on Internal Control Over Financial Reporting**
The Company's management is also responsible for establishing and maintaining adequate internal control over financial reporting as defined in Exchange Act Rule 13a-15(f). As of the end of the period covered by this report, management, under the supervision of the Company's Chief Executive Officer and Chief Financial Officer,

evaluated the effectiveness of the Company's internal control over financial reporting based on the framework in Internal Control-Integrated Framework (2013) issued by the Committee of Sponsoring Organizations of the Treadway Commission. Based upon that evaluation, *the Chief Executive Officer and Chief Financial Officer concluded that the Company's internal control over financial reporting was effective as of the end of the period covered by this report*. The effectiveness of the Company's internal control over financial reporting as of December 29, 2018 has been audited by PricewaterhouseCoopers LLP, an independent registered certified public accounting firm, as stated in its report which is included herein.

**Changes in Internal Controls**
There have been no significant changes in the Company's internal control over financial reporting during the Company's fourth quarter that have materially affected or are reasonably likely to materially affect its internal control over financial reporting, as defined in Rule 13a-15(f) promulgated under the Securities Exchange Act of 1934, as amended.

(Emphasis added.)

22.    On April 24, 2019, Tupperware issued a press release (the "April Press Release") announcing its second quarter 2019 financial results. In the April Press Release, Tupperware provided a full-year 2019 guidance of $3.65 to $3.76 GAAP EPS (compared to $3.11 from full-year 2018).

23.    On May 15, 2019, Tupperware filed a Form 10-Q for the quarterly period ended March 30, 2019 with the SEC (the "1Q 2019 10-Q"), which provided the Company's financial results and position. The 1Q 2019 10-Q was signed by Defendant Harris. The 1Q 2019 10-Q contained signed certifications pursuant to SOX by Defendants Stitzel and Harris attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

24.     The 1Q 2019 10-Q provided the following, in pertinent part, regarding the Company's internal controls:

**Item 4.          Controls and Procedures**
***Evaluation of Disclosure Controls and Procedures***
The Company maintains disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15(d)-15(e)) that are designed to ensure that information required to be disclosed in the Company's reports filed or submitted under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in the Securities and Exchange Commission's rules and forms, and that such information is accumulated and communicated to the Company's management, including the Chief Executive Officer and the Chief Financial Officer, as appropriate to allow timely decisions regarding required disclosure. In designing and evaluating the disclosure controls and procedures, management recognized that controls and procedures, no matter how well designed and operated, can provide only reasonable assurance of achieving the desired control objectives.

As of the end of the period covered by this report, management, under the supervision of the Company's Chief Executive Officer and Chief Financial Officer, evaluated the effectiveness of the design and operation of the Company's disclosure controls and procedures. Based upon that evaluation, ***the Chief Executive Officer and Chief Financial Officer concluded that the design and operation of the disclosure controls and procedures were effective***.

***Changes in Internal Controls***
There have been no significant changes in the Company's internal control over financial reporting during the Company's first quarter that have materially affected or are reasonably likely to materially affect its internal control over financial reporting, as defined in Rule 13a-15(f) promulgated under the Securities Exchange Act of 1934, as amended ( the "Exchange Act").

(Emphasis added.)

25.     On July 24, 2019, Tupperware issued a press release (the "July Press

Release") announcing its second quarter 2019 results. In the July Press Release, Tupperware provided full-year 2019 guidance of $2.94 to $3.09 GAAP EPS (compared to $3.11 from full-year 2018).

26.     On August 1, 2019, Tupperware filed a Form 10-Q for the quarterly period ended June 29, 2019 with the SEC (the "2Q 2019 10-Q"), which provided the Company's financial results and position. The 2Q 2019 10-Q was signed by Defendant Harris. The 2Q 2019 10-Q contained signed certifications pursuant to SOX by Defendants Stitzel and Harris attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

27.     The 2Q 2019 10-Q provided the following, in pertinent part, regarding the Company's internal controls:

**Item 4.     Controls and Procedures**
***Evaluation of Disclosure Controls and Procedures***
The Company maintains disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15(d)-15(e)) that are designed to ensure that information required to be disclosed in the Company's reports filed or submitted under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in the Securities and Exchange Commission's rules and forms, and that such information is accumulated and communicated to the Company's management, including the Chief Executive Officer and the Chief Financial Officer, as appropriate to allow timely decisions regarding required disclosure. In designing and evaluating the disclosure controls and procedures, management recognized that controls and procedures, no matter how well designed and operated, can provide only reasonable assurance of achieving the desired control objectives.

As of the end of the period covered by this report, management, under the supervision of the Company's Chief Executive Officer and Chief Financial Officer, evaluated the effectiveness of the design and operation of the Company's disclosure controls and procedures. Based upon that evaluation, ***the Chief Executive Officer and Chief***

*Financial Officer concluded that the design and operation of the disclosure controls and procedures were effective*.

### Changes in Internal Controls

There have been no significant changes in the Company's internal control over financial reporting during the Company's second quarter that have materially affected or are reasonably likely to materially affect its internal control over financial reporting, as defined in Rule 13a-15(f) promulgated under the Securities Exchange Act of 1934, as amended (the "Exchange Act").

(Emphasis added.)

28.     On October 30, 2019, Tupperware issued a press release (the "October Press Release") announcing its third quarter 2019 results. In the October Press Release, Tupperware provided full-year 2019 guidance of $1.93 to $1.99 GAAP EPS (compared to $3.11 from full-year 2018).

29.     On November 6, 2019, Tupperware filed a Form 10-Q for the quarterly period ended September 28, 2019 with the SEC (the "3Q 2019 10-Q"), which provided the Company's financial results and position. The 3Q 2019 10-Q was signed by Defendant Harris. The 3Q 2019 10-Q contained signed certifications pursuant to SOX by Defendants Stitzel and Harris attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

30.     The 3Q 2019 10-Q provided the following, in pertinent part, regarding the Company's internal controls:

### Item 4.     Controls and Procedures
### Evaluation of Disclosure Controls and Procedures

The Company maintains disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15(d)-15(e)) that are designed to ensure that information required to be disclosed in the

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

Company's reports filed or submitted under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in the Securities and Exchange Commission's rules and forms, and that such information is accumulated and communicated to the Company's management, including the Chief Executive Officer and the Chief Financial Officer, as appropriate to allow timely decisions regarding required disclosure. In designing and evaluating the disclosure controls and procedures, management recognized that controls and procedures, no matter how well designed and operated, can provide only reasonable assurance of achieving the desired control objectives. Further, because of the inherent limitations in all control systems, no evaluation of controls can provide absolute assurance that misstatements due to error or fraud will not occur or that all control issues and instances of fraud, if any, within the company will be detected.

As of the end of the period covered by this report, management, under the supervision of the Company's Chief Executive Officer and Chief Financial Officer, evaluated the effectiveness of the design and operation of the Company's disclosure controls and procedures. Based upon that evaluation, ***the Chief Executive Officer and Chief Financial Officer concluded that the design and operation of the disclosure controls and procedures were effective***.

***Changes in Internal Controls***
There have been no significant changes in the Company's internal control over financial reporting during the Company's third quarter that have materially affected or are reasonably likely to materially affect its internal control over financial reporting, as defined in Rule 13a-15(f) promulgated under the Securities Exchange Act of 1934, as amended (the "Exchange Act").

(Emphasis added.)

31.     The 3Q 2019 10-Q provided the following, in relevant part, regarding the Company's credit agreement:

***Credit Agreement***
On March 29, 2019, the Company and its wholly owned subsidiaries Tupperware Nederland B.V., Administradora Dart, S. de R.L. de

10

C.V., and Tupperware Brands Asia Pacific Pte. Ltd. [] amended and restated its multicurrency Credit Agreement, amended by Amendment No. 1 dated August 28, 2019 (so as amended, the "Credit Agreement") . . . The Credit Agreement replaces the credit agreement dated September 11, 2013 and as amended (the "Old Credit Agreement") and, ***other than an increased aggregate amount that may be borrowed, an improvement in the consolidated leverage ratio covenant and a slightly more favorable commitment fee rate, has terms and conditions similar to that of the Old Credit Agreement.*** The Credit Agreement makes available to the Company and the Subsidiary Borrowers a committed five-year credit facility in an aggregate amount of $650 million (the "Facility Amount").

*       *       *

***The financial covenants provide for a maximum Consolidated Leverage Ratio of 3.75 to 1.0 and a minimum interest coverage ratio of 3.0 to 1.0 (defined as consolidated EBITDA divided by consolidated total interest expense).*** For purposes of the Credit Agreement, consolidated EBITDA represents earnings before interest, income taxes, depreciation and amortization, as adjusted to exclude unusual, non-recurring gains as well as non-cash charges and certain other items. ***As of September 28, 2019, and currently, the Company was in compliance with the financial covenants in the Credit Agreement.***

***Under the Credit Agreement and consistent with the Old Credit Agreement, the Guarantor unconditionally guarantees all obligations and liabilities of the Company and the Subsidiary Borrowers relating to the Credit Agreement, supported by a security interest in certain "Tupperware" trademarks and service marks.*** The Credit Agreement includes a trigger whereby the Company would be required to provide additional collateral and subsidiary guarantees if Moody's Investors Services, Inc. downgrades its existing ratings two notes or more or S&P Global Ratings downgrades its existing ratings one or more notches.

*       *       *

11

At September 28, 2019, the Company had $406.1 million of unused lines of credit, including $324.9 million under the committed, secured Credit Agreement, and $81.2 million available under various uncommitted lines around the world.

(Emphasis added.)

32.   The statements referenced in ¶¶19-31 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Tupperware lacked effective internal controls; (2) as a result, Tupperware would need to investigate Fuller Mexico's accounting and liabilities; (3) consequently, Tupperware would be unable to timely file its annual report on Form 10-K for its fiscal year 2019; (4) Tupperware did not properly account for its accounts payable and accrued liabilities at Fuller Mexico; (5) Tupperware provided overvalued earnings per share guidance; (6) Tupperware would need relief from its $650 million Credit Agreement; and (7) as a result, Defendants' public statements were materially false and/or misleading at all relevant times.

## THE TRUTH EMERGES

33.   On February 24, 2020, after market hours, Tupperware issued a press release (the "February Press Release") announcing that the Company "will file a Form 12b-25 Notification of Late Filing with the Securities and Exchange Commission to provide a 15-calendar day extension within which to file its Form 10-K for the fiscal year ended December 28, 2019". The February Press Release also announced the following, in pertinent part:

12

***GAAP diluted E.P.S. is expected to be in the range of breakeven to $0.34 versus $3.11 in the prior year.*** The current year was negatively impacted by $40 million for the non-cash impairment of goodwill and intangible assets and $35 million of re-engineering costs

The Fuller Mexico full-year 2019 negative impact on an adjusted* pre-tax basis is expected to be in the range of $19-21 million

\*      \*      \*

Adjusted* pre-tax return on sales is expected to be approximately 10% or 12% excluding the Fuller Mexico impact, versus 14% in the prior year

Adjusted* diluted E.P.S. is expected to be $1.35-$1.70 versus $4.30 in the prior year, including $0.26 cents from foreign currency

\*      \*      \*

The Company experienced continued execution challenges and unfavorable macro-economic trends most notably in its core markets of Brazil, China, and U.S. & Canada. The impact on segment profit is expected to be approximately $83 million or $0.75 cents per share, excluding Fuller Mexico of $19-21 million.

***The Company is conducting an investigation primarily into the accounting for accounts payable and accrued liabilities at its Fuller Mexico beauty business to determine the extent to which these matters may further impact results and to assess and enhance the effectiveness of internal controls at this business.*** This matter is $9-11 million of the total expected $19-21 million full-year impact on an adjusted* pre-tax basis. In addition, total impairments for Fuller Mexico are expected to be approximately $31 million. The total pre-tax impact for 2019 is approximately $50-52 million.

"While challenges in Brazil, China, and the U.S. & Canada businesses persisted in the fourth quarter in line with our expectations, our preliminary results were further affected by financial reporting issues in Fuller Mexico. ***We are working rapidly***

13

*to address these Fuller Mexico issues in order to finalize our 2019 results.* We are also focused on facing the clear headwinds in our core markets and accelerating the pace at which we can achieve meaningful improvement in the business," said Chris O'Leary, the Company's Interim CEO.

\*     \*     \*

**Debt Covenant**

Based on the 2020 outlook, *the Company is forecasting a need for relief concerning its existing leverage ratio covenant in its $650 million Credit Agreement dated March 29, 2019 (the "Credit Agreement"), to avoid a potential acceleration of the debt, which could have a material adverse impact on the Company.* Approvals have been received, pending completion of final documentation, from participating banks to amend the maximum consolidated leverage (debt-to-EBITDA) in the Credit Agreement for the required relief. *In connection with the amendment, the Company and certain of its subsidiaries will provide additional collateral and subsidiary guarantees.*

(Emphasis added.)

34.     On this news, shares in Tupperware's stock fell $2.61 per share, or over 45%, to close at $3.11 per share on February 25, 2020, damaging investors.

35.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

36.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired Tupperware securities publicly traded on the NYSE during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of

14

Tupperware, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

37.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Tupperware securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

38.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

39.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

40.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition and business of Tupperware;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the

15

statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused Tupperware to issue false and misleading filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false filings;

- whether the prices of Tupperware securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

41.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

42.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Tupperware shares met the requirements for listing, and were listed and actively traded on the NYSE, an efficient market;

- As a public issuer, Tupperware filed periodic public reports;

- Tupperware regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire

16

services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

- Tupperware's securities were liquid and traded with sufficient volume during the Class Period; and

- Tupperware was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

43.     Based on the foregoing, the market for Tupperware securities promptly digested current information regarding Tupperware from all publicly available sources and reflected such information in the prices of the securities, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

44.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I

### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder
### Against All Defendants

45.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

46.     This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

47.     During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

48.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Tupperware securities during the Class Period.

49.     Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Tupperware were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of Tupperware, their control over, and/or receipt and/or modification of Tupperware's allegedly materially misleading statements, and/or their

associations with the Company which made them privy to confidential proprietary information concerning Tupperware, participated in the fraudulent scheme alleged herein.

50.     Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Tupperware personnel to members of the investing public, including Plaintiff and the Class.

51.     As a result of the foregoing, the market price of Tupperware securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Tupperware securities during the Class Period in purchasing Tupperware securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

52.     Had Plaintiff and the other members of the Class been aware that the market price of Tupperware securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased Tupperware securities at the artificially inflated prices that they did, or at all.

53.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

54.     By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the

plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Tupperware securities during the Class Period.

## COUNT II

### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

55.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

56.     During the Class Period, the Individual Defendants participated in the operation and management of Tupperware, and conducted and participated, directly and indirectly, in the conduct of Tupperware's business affairs. Because of their senior positions, they knew the adverse non-public information about Tupperware's misstatement of revenue and profit and false financial statements.

57.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Tupperware's financial condition and results of operations, and to correct promptly any public statements issued by Tupperware which had become materially false or misleading.

58.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Tupperware disseminated in the marketplace during the Class Period concerning Tupperware's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Tupperware to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Tupperware within the meaning of Section 20(a) of the Exchange

Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Tupperware securities.

59.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Tupperware.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a)    declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b)    awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)    awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

Dated: February 25, 2020

**THE ROSEN LAW FIRM, P.A.**

*/s/Laurence M. Rosen*
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS